JUDGE COTE

08 CV 4420

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



FORTUNE BRANDS, INC. and BEAM GLOBAL
SPIRITS & WINE, INC. (formerly known as JIM
BEAM BRANDS WORLDWIDE, INC.),

                                         Petitioners,

     -against-

V&S VIN & SPRIT AB (publ),

                                     Respondent.

No. 08 Civ.

**VERIFIED PETITION FOR
INJUNCTIVE RELIEF IN
AID OF ARBITRATION**

        Petitioners Fortune Brands, Inc. ("Fortune") and Beam Global Spirits & Wine, Inc.

(formerly known as Jim Beam Brands Worldwide, Inc.) ("Beam"), for their verified petition

herein against respondent V&S Vin & Sprit AB (publ) ("V&S"), pursuant to the Federal

Arbitration Act (9 U.S.C. § 4), Rule 65 of the Federal Rules of Civil Procedure and Section

7502(c) of the New York Civil Practice Law and Rules, for injunctive relief in aid of arbitration,

respectfully allege as follows:

## NATURE OF ACTION

        1.    This action arises out of the Shareholders and Registration Rights Agreement

made as of May 31, 2001 between the petitioners and respondent (Ex. A)[1] pursuant to which

---

[1]    As the Shareholders Agreement contains a confidentiality clause (¶ 11), it is not being filed
with this Verified Petition.  It will be filed under seal once a protective order is entered.

respondent acquired a ten percent (10%) ownership interest in Beam by the purchase of Beam preferred stock ("Beam Shares").  Except in certain situations not applicable here, Sections 2 and 4 of that agreement prohibits V&S from transferring the Beam Shares other than in a Permitted Transfer.  Under the agreement, a Permitted Transfer is limited, in the current situation, to transfers to V&S' Controlled Affiliates, meaning entities controlled by V&S. Recently, Pernod Ricard S.A. ("Pernod") announced its agreement to acquire V&S in a stock acquisition.  As set forth in more detail below, as part of that acquisition, the closing of which has yet to occur but may be imminent, V&S has stated its intent to transfer the Beam Shares to the Kingdom of Sweden, which is not a permissible transferee under the agreement.  The transfer of the Beam Shares to the Swedish Government, a contractual and business stranger to Fortune and Beam, would risk serious and irreparable harm.  While Fortune intends to commence arbitration promptly pursuant to the arbitration clause in the agreement, preliminary injunction relief in aid of arbitration, as expressly permitted under the agreement, is urgently needed from this Court preventing the transfer of the Beam Shares in violation of the agreement.

### PARTIES

2.    Petitioner Fortune is a Delaware corporation with its principal place of business in Illinois.

3.    Petitioner Beam is a Delaware corporation with its principal place of business in Illinois.  Beam is a subsidiary of Fortune with Fortune owning 90% of the equity interest and V&S owning 10% of the equity interest.  In 2006, Jim Beam Brands Worldwide, Inc. changed its name to Beam Global Spirits & Wine, Inc.  Beam is the owner of the Jim Beam Bourbon brand.

2

4.    Respondent V&S is a Swedish company organized under the laws of Sweden with its principal place of business in Sweden.  V&S is wholly owned by the Kingdom of Sweden.  V&S is the owner of the Absolut Vodka brand.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332, in that it is a dispute between Delaware corporations with their principal places of business in Illinois and a Swedish company with its principal place of business in Sweden, and the amount in controversy exceeds $75,000.

6.    Venue is proper and appropriate in this district as the arbitration at issue will be commenced in this district in accordance with the parties' agreement, and pursuant to Section 16(b)(xii) of the parties' agreement (Ex. A) which provides that "each of the parties hereto irrevocably submits to the jurisdiction of a court of competent jurisdiction in and for the City, State and County of New York (including the United States District Court for the Southern District of New York) . . . ."

## FACTS

7.    Fortune, Beam and V&S are parties to a Shareholders and Registration Rights Agreement dated May 31, 2001, a copy of which is annexed hereto as Exhibit A (the "Shareholders Agreement").

8.    In 2001, Beam conveyed to V&S a ten percent (10%) equity interest in Beam in the form of Beam preferred stock (the "Beam Shares").  The rights and obligations of Fortune, Beam and V&S with respect to the Beam Shares are set forth in the Shareholders Agreement.

3

9.    The Shareholders Agreement was part of a complex and interrelated series of agreements between Fortune/Beam and V&S.  As part of those transactions, Beam and V&S jointly formed Future Brands LLC for the purpose of promoting joint U.S. sales and U.S. distribution for Beam and V&S products.   In connection with forming that venture, the parties executed over fifteen agreements, including the Shareholders Agreement, which govern the complicated relationship between petitioners and V&S.  Those agreements set forth each party's rights and obligations, contain detailed indemnification and contribution rights, set forth expense sharing arrangements and agreements for product distribution, and provide for certain confidentiality protections.  Simultaneously, V&S also joined a joint venture with Beam and others for the joint distribution of their products outside the U.S. It was in the context of this overall structure that the Beam Shares were conveyed to V&S.  As the Shareholders Agreement makes clear, it was and is extremely important to Fortune and Beam that ownership of the Beam Shares remain within that legal structure, as the Shareholders Agreement requires.

10.    The Shareholders Agreement expressly limits V&S' right to transfer the Beam Shares.  Specifically, the Shareholders Agreement provides that V&S may transfer the Beam Shares without Fortune's consent only in limited circumstances.  V&S is permitted to transfer the Beam Shares only in a "Permitted Transfer."  A "Permitted Transfer" includes a transfer to a "Controlled Affiliate" of V&S and then only if the "Controlled Affiliate" as a condition to the transfer "agrees in writing to be bound by this [Shareholders] Agreement as if such transferee were an original party hereto, by executing and delivering to the Secretary of the Company a written undertaking to be bound by the terms and conditions of this Agreement."

NY2 - 495278.02

11.   Section 27 of the Shareholders Agreement provides that, unless defined in that agreement, the capitalized terms therein had the meanings set forth in the Master Transaction Agreement among the parties.  The Master Transaction Agreement dated March 20, 2001 among Fortune, Beam and V&S defines "Controlled Affiliate" as "an Affiliate over which a Person exercises Control; for the avoidance of doubt, a Controlled Affiliate includes a Person in which another Person owns a majority of the voting equity power of such Person."

12.   This restriction on transfer of the Beam Shares was of critical importance to Fortune and Beam.  As the ninety percent (90%) shareholder of Beam, Fortune strongly desired to severely restrict who its fellow shareholder would be.  From Beam's perspective, it was important to restrict who could become an owner of its stock and thereby influence management and exercise minority shareholder rights.  V&S' equity stake in Beam is one component of a multi-faceted relationship and should not be separated from the carefully structured contractual structure.  The Shareholders Agreement provides V&S with certain corporate governance rights over Beam, including representation on Beam's Board of Directors.

13.   On March 31, 2008, the French company Pernod publicly announced that it had entered into an agreement with the Kingdom of Sweden to acquire V&S in a stock acquisition.  Upon the execution of the agreement for the acquisition of V&S by Pernod, an "ASCI Change of Control," as set forth in Section 2(a)(ii) of the Shareholders Agreement, will occur.  ASCI is The Absolut Spirits Company, Incorporated, the U.S. subsidiary of V&S.

14.   Section 2(a)(ii) of the Shareholders Agreement (Ex. A p. 4) provides that, upon an ASCI Change of Control, Fortune may repurchase the Beam Shares from V&S:

"Fortune shall have the right and call option (the 'Call Option') but not the obligation to purchase in whole, but not in part, Company Shares owned by V&S on sixty (60) days' prior written notice (the 'Call Notice') (a) upon an ASCI Change Of Control . . . ."

15.  By notice dated April 24, 2008 sent via telecopier (Ex. B) (the "Call Notice"), Fortune exercised its right under Section 2(a)(ii) of the Shareholders Agreement to purchase the Beam Shares, and gave the required sixty (60) days notice.

16.  Section 2(a)(iii) of the Shareholders Agreement provides that the price Fortune shall pay to repurchase the Beam Shares is "Fair Market Value."  The definition of "Fair Market Value" (Ex. A p. 25) provides that if Beam's Board of Directors, which includes one V&S nominated director, cannot unanimously agree on a determination of Fair Market Value within thirty (30) days of the Call Notice, the issue shall be submitted to "an independent third party with expertise in the spirits industry mutually acceptable to" the parties.

17.  While Fortune has exercised its right to acquire the Beam Shares, the parties have been unable to agree on the Fair Market Value of those shares.  As such, the Beam directors are now obligated under the Shareholders Agreement to select a mutually acceptable independent third party to value the Beam Shares.  To date, the parties have not yet agreed upon an independent third party to value the Beam Shares.

18.  In Pernod's March 30, 2008 press release announcing this acquisition (found at www.Pernod-Ricard.com) (Ex. C), Pernod stated that it would not be acquiring the Beam Shares as part of its acquisition of V&S:

6

"Pernod Ricard is pleased to announce the signing of a contract with the Kingdom of Sweden for the acquisition of 100% of the shares of Vin & Sprit Group ('V&S'), the owner of Absolut Vodka. ***The acquisition does not include V&S's 10% interest in Beam Global Spirits & Wine, Inc.***"[2]

19.    In its April 24, 2008 Call Notice (Ex. B), Fortune reminded V&S of the prohibition against its transferring the Beam Shares except as permitted by the Shareholders Agreement, and asked for V&S's assurance that such a transfer would not happen:

"In the interim, we ask that you provide us at your earliest convenience with explicit written confirmation that V&S will abide by the terms of the Shareholders Agreement, including but not limited to the prohibition on transfer of the Beam Global Preferred Shares set forth in Section 2 and 4 of the Shareholders Agreement."

20.    In its response dated May 8, 2008 (Ex. D), V&S advised Fortune of its intentions as follows:

"the agreement for the sale of V&S contemplates the transfer of the Beam Stake to a wholly-owned subsidiary of V&S that ***will be retained by the Kingdom of Sweden*** pending the completion of the call right that you have exercised." Ex. D p. 1.

21.    As V&S's May 8 email (Ex. D) makes clear, the acquisition agreement between Pernod and V&S requires that V&S initially transfer the Beam Shares to its wholly-owned subsidiary (which appears to be consistent with the Shareholders Agreement) and that, upon the closing of Pernod's acquisition of V&S, V&S transfer the V&S subsidiary owning the Beam Shares to the Kingdom of Sweden. This is in direct violation of the Shareholders Agreement which provides that only affiliates controlled by V&S can own the Beam Shares. The Kingdom

---

[2]    Unless otherwise indicated, emphasis is added throughout this Petition.

7

of Sweden or an entity owned by it is not a permissible transferee under the Shareholders

Agreement.

      22.   In the event V&S transfers the Beam Shares to an entity that is not a V&S

Controlled Subsidiary, Fortune and Beam will be irreparably harmed.  For one, such a transfer

would put the Beam Shares in the hands of a stranger to petitioners, the Kingdom of Sweden,

with which Fortune and Beam have no contractual or business relationships.  Such a transfer

would put minority shareholder rights, including the right of a seat on Beam's board and the

right to bring shareholder claims and derivative claims, in the hands of a stranger.[3]  Moreover,

Beams's by-laws permit any holder of at least ten percent (10%) of its outstanding stock to call a

meeting of the company's stockholders.  In addition, such transfer would likely frustrate

Fortune's contractual right to acquire the Beam Shares as its contractual counter-party, V&S,

which is obligated to sell the Beam Shares to Fortune pursuant to the Call Option, will no longer

own or control the Beam Shares.

      23.   Fortune will soon commence arbitration before the American Arbitration

Association in New York pursuant to the arbitration clause in Section 16(b) of the Shareholders

Agreement (Ex. A).  In that arbitration, Fortune will likely bring claims concerning the Fair

---

[3]   In the event a transfer of the Beam Shares were to occur in violation of the Shareholders
Agreement, Fortune and Beam reserve the right to assert that an impermissible transferee
succeeds to none of the rights held by V&S.

Market Value of the Beam Shares and will bring claims that the intended transfer of the Beam

Shares to the Kingdom of Sweden is a breach of the Shareholders Agreement.

24.    Under Section 16(b)(vii) of the Shareholders Agreement (Ex. A), the parties

agreed that any party may seek injunctive relief in aid of arbitration:

> "Provisional Remedies. *Before the establishment of the arbitral tribunal, either party may (without inconsistency with this agreement to arbitrate) seek from any court having jurisdiction interim injunctive or other equitable relief* in respect of the subject matter of the Dispute. Any party may seek, to the full extent allowed by law, judicial enforcement in a court having jurisdiction of any relief granted by the arbitral tribunal. If any court takes jurisdiction of any Dispute, the parties agree that (a) punitive, consequential or exemplary damages will not be available and (b) the parties waive the right to trial by jury."

25.    Petitioners lack an adequate remedy at law to address the substantial and

irreparable harm that will result from respondent's wrongful actions.

26.    Ancillary to its power under the Federal Arbitration Act to compel arbitration,

this Court is empowered to issue preliminary injunctive relief to preserve the meaningfulness of

arbitration by preventing a party from irreversibly altering the status quo.

27.    This Court is further authorized to grant such injunctive relief pending

arbitration pursuant to 28 U.S.C. § 1651, in aid of its jurisdiction.

## **RELIEF REQUESTED**

28.    For the foregoing reasons, petitioners respectfully request the issuance of an

order (a) preliminarily enjoining respondent, pending final determination of the arbitration to be

commenced by Fortune and Beam, from transferring, selling or assigning the Beam Shares other

than in compliance with Section 2 and 4 of the Shareholders Agreement, (b) preliminarily

enjoining respondent from engaging in any transaction that will result in the Beam Shares being

NY2 - 495278.02

owned by an entity other than V&S or a V&S Controlled Affiliate; (c) awarding petitioners their

legal fees, costs and expenses of this proceeding, and (d) granting such other and further relief

as this Court deems just and proper.

Dated:  New York, New York
        May 12, 2008

                                        CHADBOURNE & PARKE LLP

                                        By_____
                                                Thomas J. Hall
                                              A Member of the Firm
                                        Attorneys for Petitioners
                                        30 Rockefeller Plaza
                                        New York, New York  10112
                                        (212) 408-5100

NY2 - 495278.02

## VERIFICATION

Mark A. Roche, duly declares under the penalties of perjury pursuant to 28 U.S.C. § 1746 that he is Senior Vice President, General Counsel and Secretary of petitioner Fortune Brands, Inc., and that he has read the foregoing Verified Petition and knows the contents thereof to be true based on his own personal knowledge, except as to matters stated therein on information and belief and, as to those matters, he believes they are true and accurate based on information available to him.

Dated:   Deerfield, Illinois
         May _11_, 2008

_____
                Mark A. Roche

Exhibit A

# EXHIBIT A

# SHAREHOLDERS AGREEMENT


# TO BE FILED FOLLOWING THE ENTRY OF A PROTECTIVE ORDER

Exhibit B



Via telecopy
+46 8-744-7474

April 24, 2008

V&S Vin & Sprit AB
SE-117 97 Stockholm
Årstaängsvägen 19a,
Stockholm
Sweden
Attention: Ola Salmén

Re:     Exercise of Call Option pursuant to the Shareholders and Registration Rights Agreement (the
        "Rights Agreement") among Fortune Brands, Inc. ("Fortune"), Jim Beam Brands Worldwide,
        Inc. n/k/a Beam Global Spirits & Wine, Inc. ("Beam Global") and V&S Vin & Sprit AB
        ("V&S") made as of May 31, 2001.

Dear Ola:

As you are aware, the Beam Global board of directors (the "Board") was unable to unanimously agree on the
Fair Market Value of the Company Shares during its regularly scheduled Board meeting held on April 22, 2008,
as the V&S representative on the Board did not vote in favor of the motion to establish a Fair Market Value of
$350 million. The Beam Global and V&S Board members did agree to have representatives meet to attempt to
reach an amicable resolution before having the Board refer the matter to an independent third party. Bengt
Baron agreed to contact me shortly to let us know when the V&S team will be ready to have this discussion.
This meeting will be without prejudice, and should be seen as a good faith effort on both sides to reach a
reasonable resolution.

In the interim, we ask that you provide us at your earliest convenience with explicit written confirmation that
V&S will abide by the terms of the Rights Agreement, including but not limited to the prohibition on the
transfer of the Company Shares set forth in Sections 2 and 4 of the Rights Agreement.

Capitalized terms used but not defined in this notice have the meanings given them in the Rights Agreement.

Very truly yours,

Christopher Klein
Senior Vice-President
Strategy and Corporate Development

Cc:     Bengt Baron
        Douglas L. Getter, Esq., Dechert LLP
        Carl Gustaf De Geer, Vinge
        Susan Kilsby, Credit Suisse

*Fortune Brands, Inc. 520 Lake Cook road, IL 60015 Tel: 847 484-4400*

Exhibit C

Home > News > Press releases

# Press releases

11/03/2008 : Pernod Ricard acquires Vin & Sprit and becomes the co-leader of the global wine and spirits industry

- Acquisition by Pernod Ricard of Vin & Sprit, owner of the Absolut brand
- Absolut, a unique asset, global leader in the premium vodka category with 11M cases
- Pernod Ricard becomes the co-leader in the global wine and spirits industry
- Purchase price of €5.626bn (including debt)
- Significant synergies expected of €125 to 150 million pre-tax
- Neutral Earnings Per Share impact in year 1, reaches significant accretion shortly after
- Return on investment above cost of capital by year 4 at the latest

*Press release - Paris, 31 March 2008*

Pernod Ricard is pleased to announce the signing of a contract with the Kingdom of Sweden for the acquisition of 100% of the shares of the Vin & Sprit Group ("V&S"), the owner of Absolut vodka. The acquisition does not include V&S' 10% interest in Beam Global Spirits & Wine, Inc.
This acquisition represents an outstanding opportunity for Pernod Ricard and will result in the Group becoming co-leader in the global wine & spirits industry.

### Absolut: a unique asset which perfectly complements Pernod Ricard's portfolio of premium brands

Absolut is the number 1 premium vodka brand worldwide with around 11 million 9 litre cases sold in 2007 and is an iconic brand whose influence goes far beyond the wine & spirits universe. It is one of only four international spirits brands in the world which sells more than 10 million cases a year and has a specially attractive growth profile (+9% volume growth in 2007).

In the United States, Absolut is the top premium spirits brand, selling more than 5 million 9 litre cases. It has a unique brand image built around values of creativity, innovation and cultural leadership.

In the rest of the world, with close to 6 million cases sold in 2007, Absolut is one of the most global brands in the industry with a significant presence in all the continents and a strong perception as a leader in the premium vodka category.

Absolut fits perfectly with Pernod Ricard's strategy and further enhances the strength of our premium brands portfolio, complementing Chivas, Ballantine's, The Glenlivet, Jameson, Martell, Beefeater, Ricard, Malibu, Kahlua, Havana Club, Mumm, Perrier-Jouet, Jacob's Creek and Montana.

The acquisition of V&S also provides Pernod Ricard with a leading position in the Nordic wine & spirits market through its portfolio of local brands. In addition, V&S also brings other attractive opportunities, notably Cruzan rum, a dynamic brand in the United States (circa 600,000 cases sold in 2007 up +27%) and Level, the number 4 brand in the super-premium vodka category in the United States.

### Pernod Ricard becomes the co-leader in the global wine & spirits industry

With the acquisition of V&S, Pernod Ricard becomes the co-leader in the global wine & spirits industry with:
- Global spirits volumes of 91 million cases(1)
- The number 1 position in premium spirits with a 27% market share(2).

In the United States, the largest spirits market worldwide, Pernod Ricard's position increases from number 4 to number 2 with a market share of close to 14%(3). V&S brands are currently distributed in the US by Future Brands (a joint venture held 49% by V&S and 51% by Fortune Brands) through a distribution agreement currently in place until beginning of 2012. From an operating stand point, V&S controls the marketing and A&P strategy for its brands. Furthermore, Absolut distributors are already largely aligned with Pernod Ricard's distributors in the US.

In the rest of the world, Absolut will benefit from the strength of Pernod Ricard's globally integrated distribution network, both in mature Western European markets as well as in high-growth emerging regions. Excluding the US and Nordic countries, V&S' brands are currently distributed through Maxxium, a joint venture between V&S, Fortune Brands, The Edrington Group and Remy Cointreau, each partner having a 25% shareholding. Pernod Ricard will exit Maxxium within 2 years from closing for a low contractual cost.

Pernod Ricard will therefore enhance the growth of Absolut in every region by combining its role as a brand-owner and its global footprint in conjunction with the existing distribution efforts of Future Brands and Maxxium. Pernod Ricard will immediately reap the benefit of Absolut's presence in its portfolio.

The acquisition of V&S will result in the end of the Stolichnaya distribution contract which Pernod Ricard will continue to perform during a short transitional period until SPI identifies a new distributor.

### A transaction with strong value creation for Pernod Ricard's shareholders

The price paid for V&S by Pernod Ricard will be €1,450 million plus USD6,050 million, i.e. €5,280 million at the current Euro/USD exchange rate. Pernod Ricard will also

assume net debt of €346 million as of 31 December 2007 resulting in a total enterprise value of €5,626 million.

V&S will pay the Swedish government a dividend of €85 million before closing of the transaction, and the purchase price of the shares will be increased by a pro-rated annual interest charge of 2.0% from 1st January 2008 until the effective closing date of the transaction. In exchange, Pernod Ricard will benefit from the full cash flow generated by V&S over this period.

The transaction will be financed through a new syndicated loan underwritten by six first-class banks: BNP Paribas, Calyon, JPMorgan, Natixis, The Royal Bank of Scotland plc and Société Générale. Pernod Ricard's opening leverage will be at circa 6x the new group's pro forma EBITDA, in line with leverage levels of the group after the Seagram and Allied Domecq transactions. Strong cash flow generation and strong EBITDA growth will allow for a fast deleveraging. The initial cost of debt should be around 5%.

This transaction will generate significant pre-tax synergies estimated at between €125 and 150 million on an annual basis. These synergies are expected to be fully extracted over two to four years, depending on the timing of exit from the Future Brands and Maxxium distribution agreements.

Based on V&S 2007 EBITDA of €270 million, the price paid corresponds to implied multiples of 20.8x EBITDA pre-synergies, or 14.2x post-synergies(4). Based on a V&S 2007 CAAP(5) of €400 million estimated by Pernod Ricard, the price implies CAAP multiples of 14.1x pre-synergies and 12.4x post-synergies. These multiples compare favorably to those observed on recent comparative transactions.

Altogether, this acquisition will reinforce the growth profile of Pernod Ricard and will generate significant value creation for Pernod Ricard's shareholders. The impact of the transaction on the earnings per share, excluding non-recurring items, is expected to be neutral in year one and significantly positive thereafter. The return on investment should exceed Pernod Ricard's cost of capital by year 4 at the latest.

Pernod Ricard is confident the transaction will be completed during summer 2008 after receiving the necessary regulatory clearances.

**Conclusion**

Patrick Ricard, Chairman and CEO of Pernod Ricard, stated:
*"The acquisition of V&S by Pernod Ricard is a fantastic opportunity and represents our third transformational acquisition since the Seagram and Allied Domecq transactions Absolut is an exceptional brand. Its integration within our portfolio of premium brands combined with the strength of our worldwide distribution network paves the way for outstanding growth prospects.
We become thus the co-leader of the global wine and spirits industry."*

Pierre Pringuet, Managing Director, added:
*"We are eager to welcome the V&S teams into the Pernod Ricard Group. The integration will be made easier by our decentralised organisation model. The integrity of the V&S group will be maintained and it will become a new 'brand-owner' and a distribution platform for the Group in Nordic countries."*

Pernod Ricard has been assisted by the following advisers on this transaction:
- JP Morgan, Deutsche Bank, and PK Partners as financial advisors
- Gernandt & Danielsson, Debevoise & Plimpton, Macfarlanes, and Gide Loyrette Nouel as legal advisors
- Ernst & Young as financial advisor
- Springtime as communication advisor

*(1) source IWSR "Western Style Spirits"*
*(2) source IWSR "International Western Style Spirits" — excluding RTDs, wine and wine-based aperitifs; excludes agency brands; Pernod Ricard market view*
*(3) source IWSR « International Western Style Spirits »*
*(4) on the basis of €125 million synergies*
*(5) CAAP: Contribution After Advertising and Promotion expenses*

**About Pernod Ricard**

*Created by the merger between Pernod and Ricard (1975), the Group has undergone sustained development, based on both organic growth and acquisitions. The purchase of part of Seagram (2001) and the acquisition of Allied Domecq (2005) have made Pernod Ricard the second largest player in the wine and spirits with industry sales of €6.4 billion in 2006/07. It is also the leader in the "ultra premium" spirits market.
Pernod Ricard benefits from a portfolio comprising some of the most prestigious brands in the sector: Ricard aniseed, Ballantine's, Chivas Regal and The Glenlivet Scotch whiskies, Jameson Irish Whiskey, Martell cognac, Havana Club rum , Beefeater gin, Kahlúa and Malibu liqueurs, Mumm and Perrier-Jouët champagnes, as well as Jacob's Creek and Montana wines.
The Group favours a decentralised organisation, with "Brand Owners" and "Distribution" companies established in each key market, and employs a workforce of about 18,000 in 70 countries.
In addition, Pernod Ricard is strongly committed to a policy of Corporate Social Responsibility and encourages responsible consumption in order to prevent alcohol misuse and abuse.*



From left to right:
Patrick Ricard (Chairman and CEO)
Mats Odell (Minister for Financial Markets, Sweden)
Pierre Pringuet (Managing Director)



Download this picture in high definition
Download this picture in low definition

For more information, download the slides and additional Pernod Ricard photos
on the "Photolibrary" page of the website's "News" section.

**Contacts Pernod Ricard**
Francisco de la VEGA / Communication VP  T: +33 (0)1 41 00 40 96
Denis FIEVET / Financial Communication - Investor Relations VP
T: +33 (0)1 41 00 41 71
Florence TARON / Press Relations Manager  T: +33 (0)1 41 00 40 88

< previous press release |                    next press release >

Exhibit D

Fortune Brands, Inc.
520 Lake Cook Road
Deerfield, IL 60015
Attention: Christopher Klein
8 May 2008


Re:      Exercise of Call Option pursuant to the Shareholders and Registration Rights
         Agreement made as of May 31, 2001 (the "**Shareholders Agreement**")
         among Fortune Brands, Inc. ("**Fortune Brands**"), Beam Global Spirits &
         Wine, Inc. (formerly named Jim Beam Brands Worldwide, Inc., "**Beam**") and
         V&S Vin & Sprit AB (publ) ("**V&S**").


Dear Christopher,

I am writing in response to your letter dated 24 April 2008 and your email to Bengt Baron of 29
April 2008 regarding the sale to Fortune Brands of the 10% interest in Beam currently held by
V&S (the "**Beam Stake**").

We have completed our assessment of the value of the Beam Stake and have concluded that its
fair market value is US$ 1,100 million.  Please note that we have not adjusted this fair market
value to account for the net debt of Beam as the Shareholders Agreement provides that the
valuation of Beam be on a "cash-free, debt-free basis."  In order to assist you in understanding
how we, with the assistance of our advisor Morgan Stanley, arrived at this valuation, you will
find attached to this letter a list of some of our key valuation considerations.

Bengt Baron would be very pleased to meet on you and will revert to you shortly with proposed
dates for such a meeting. Bengt will be accompanied by myself as well as by Håkan Erixon from
the Ministry and a representative of Morgan Stanley. However it may still be sensible that we in
the meantime prepare to submit the matter to an independent third party. To that end, we propose
that each of us develops a list of reputable, independent banks with expertise in the spirits
industry, which each of us believes should be acceptable to the other.

For the purposes of our valuation assessment, we continue to believe that it is important for us to
carefully consider and understand your valuation methodology. We therefore kindly request that
you provide us with the updated Beam business plan (with specific adjustments relating to the
sale of V&S explicitly shown) as well as the financial analysis and supporting materials which
explain your proposed US$350 million valuation.

Finally, it is our intention and expectation that both parties will comply with the terms of the
Shareholders Agreement.  Consistent with the terms of the Shareholders Agreement and your
desire that the Beam Stake not be held by the buyer of V&S, the agreement for the sale of V&S
contemplates the transfer of the Beam Stake to a wholly-owned subsidiary of V&S that will be
retained by the Kingdom of Sweden pending the completion of the call right that you have
exercised.  The sale of V&S and the sale of the Beam Stake will therefore be pursuant to separate
processes with independent timelines.

We look forward to your reply and remain at your disposal for any questions or matters you may want to raise.


Very truly yours,



Ola Salmén
CFO


cc:    Bengt Baron



The following is a list of some of our key valuation considerations:

- We have valued Beam in the context of its global No. 4 position in the spirits industry and strong premium portfolio led by its flagship brand Jim Beam. Furthermore, we have taken into consideration the significant improvement in Beam's market position, as well as growth and margin profile, following the acquisition of ca. 25 former Allied Domecq brands in 2005, where V&S provided support to Beam's ambitions in the form of equity financing

- With the improvement of Beam's portfolio following the acquisition of former Allied Domecq brands and its elevated financial profile since V&S's initial investment into Beam, we believe a multiple uplift compared to the original transaction to be justified. With future growth rates of Beam expected on par with industry peers, our analysis implies a trading value of around 13x 2008E EBITDA

- With regards to a discontinuation of Beam's distribution partnerships, we note that Fortune on 31 March 2008, announced that "the operational consequences of the V&S privatization are very manageable" and that no "adverse EPS impact to Fortune Brands in the near term" was to be expected. We concur with such views given that (i) any restructuring of Maxxium/ Future Brands will rather be a one-off cost which should not materially affect Beam's long-term value; and (ii) as speculated by market analysts, Beam may form alternative distribution arrangements and/or engage in acquisitions of brands to replace lost volumes and strengthen market clout. We obviously have first hand experience of this in light of V&S's shift in distribution in 2001, where no damage into perpetuity occurred although a short-term disruption took place. As a market-based reference point, in the absence of any meaningful news flow with respect to Fortune Brands Home & Hardware and Golf divisions, we note that Fortune's share price has increased more than 8%[1] since the announcement of the V&S sale to Pernod Ricard, which, of course, also factors in the announced buy-back program

- We note that no liquidity discount was deemed appropriate in connection with the original investment or reinvestment. Thus, any precedents would only be relevant to the

extent that they reflect situations where a liquidity discount was applied to the repurchase price, despite "full" price being paid initially

- We also note that our significant participation rights, board seat and preferred dividend priority associated with the Beam Stake should be factored into the valuation

Note
(1) Relative to an average sector increase of ca. 3% based on Diageo, Pernod Ricard, Remy Cointreau and Brown Forman