UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
                                                                 )
FORTUNE BRANDS, INC. and BEAM                                    )
GLOBAL SPIRITS & WINE INC. (formerly                             )
known as JIM BEAM BRANDS                                         )
WORLDWIDE, INC.),                                                )
                                                                 )
                              Petitioners,                       )   No. 08 Civ. 4420 (DLC)
                                                                 )
            v.                                                   )
                                                                 )
V&S VIN & SPRIT AB (publ),                                       )
                                                                 )
                              Respondent.                        )
                                                                 )
---------------------------------------------------------------- x

**RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO
TEMPORARY RESTRAINING ORDER AND PETITION FOR
<u>INJUNCTION IN AID OF ARBITRATION</u>**


DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 450-3800

*Attorneys for Respondent
   V&S Vin & Sprit AB (publ)*


Dated: May 13, 2008

By:  Arthur F. Golden
     Joel M. Cohen

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES .................................................................................................. i

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 4

ARGUMENT .......................................................................................................................... 7

    I.   The Transfer of Beam Shares Would Not Breach the Shareholders Agreement ................ 8

    II.  Petitioners Would Not Be Harmed If The Court Denies Relief ....................................... 10

        A.  The Proposed Arbitration is Irrelevant ......................................................... 10

        B.  The Purported Harm is Speculative and Hypothetical ................................. 11

        C.  Petitioners Will Not Be Harmed By Dealing with a Company Owned By the Kingdom of Sweden ..................................................................................... 13

    III. The Balance of Hardships Weighs in Favor of Respondent ............................................ 13

CONCLUSION ..................................................................................................................... 15

# TABLE OF AUTHORITIES

PAGE

**Cases**

*Albert v. Avery, Inc.*, 724 F. Supp. 245 (S.D.N.Y. 1989) ................................................................ 15

*Alcatel Space, S.A. v. Loral Space & Commc'ns Ltd.*, 154 F. Supp. 2d 570
    (S.D.N.Y. 2001) ...................................................................................................................... 12

*Borey v. Nat. Union Fire Ins. Co.*, 934 F.2d 30 (2d Cir. 1991) ........................................................ 7

*Cedar Swamp Holdings, Inc. v. Zaman*, 472 F. Supp. 2d 591 (S.D.N.Y. 2007)…………………11

*Gaming Mktg. Solutions, Inc. v. Cross*, No. 07 Civ. 4624 (RJS), 2008 WL 858183
    (S.D.N.Y. Apr. 1, 2008) ................................................................................................ 10, 11, 12

*Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n*, 965 F.2d 1224
    (2d Cir. 1992) ............................................................................................................................ 7

*Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227 (2d Cir. 1999) ........................................ 10

*Suchodolski Assocs., Inc. v. Cardell Fin. Corp.*, No. 03 Civ. 4148 (WHP), 2003 WL 22909149
    (S.D.N.Y. Dec. 10, 2003) ........................................................................................................ 14

*Tellium, Inc. v. Corning Inc.*, No. 03 Civ. 8487 (NRB), 2004 WL 307238 (S.D.N.Y.
    Feb. 13, 2004) ................................................................................................................... 13, 15

*Von Grabe v. Ziff Davis Publ'g Co.*, No. 91 Civ. 6275 (DLC), 1994 WL 719697
    (S.D.N.Y. Dec. 29, 1994) .......................................................................................................... 7

*Wisdom Import Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101 (2d Cir. 2003) ............................ 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------x
                                             )
FORTUNE BRANDS, INC. and BEAM                )
GLOBAL SPIRITS & WINE, INC. (formerly        )
known as JIM BEAM BRANDS                     )
WORLDWIDE, INC.),                            )
                                             )
                    Petitioners,             )   No. 08 Civ. 4420 (DLC)
                                             )
          v.                                 )
                                             )
V&S VIN & SPRIT AB (publ),                   )
                                             )
                    Respondent.              )
                                             )
---------------------------------------------x

**RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO
TEMPORARY RESTRAINING ORDER AND PETITION FOR
INJUNCTION IN AID OF ARBITRATION**

Respondent V&S Vin & Sprit AB (publ) ("V&S"), a company wholly owned by the Kingdom of Sweden, respectfully submits this memorandum of law in opposition to Petitioners' application for a temporary restraining order and for an injunction in aid of arbitration. Petitioners are wrong on the merits of their contract arguments, and there clearly is no need for emergency relief. This petition is, frankly, a tactical maneuver designed to exert pressure on V&S and the Swedish government in an ongoing commercial negotiation. For the reasons set forth below, the Court should deny the requested emergency relief.

**PRELIMINARY STATEMENT**

Petitioners' request for a temporary restraining order "in aid of arbitration" is baseless. Petitioner Beam Global Spirits & Wine, Inc. (together with subsidiaries, "Beam") is an owner and distributor of alcoholic beverage brands. Since 2001 it has had a contractual relationship with V&S's Absolut Vodka and other brands. As part of that overall arrangement, V&S became

the owner of 10% of Beam's stock (the "Beam Shares").  Petitioner Fortune Brands, Inc. ("Fortune") owns the remaining 90% of Beam and has exercised a contractual option to acquire V&S's 10% stake at Fair Market Value.  The only genuine dispute between the parties concerns the calculation of Fair Market Value, *i.e.*, how much Fortune must pay to acquire the Beam Shares.  If the parties are unable to agree on a value – and they are extremely far apart on that subject – their agreement provides that a mutually acceptable independent third party will determine the Fair Market Value of the stock.  It is a straightforward process to which neither party objects.  In fact, there is a meeting scheduled on Friday morning (May 16) in London to exchange suggestions for the selection of an appropriate independent third party.

The present application for emergency relief has no bearing on the only substantive dispute between the parties – determining the Fair Market Value of the Beam Shares.  Instead, Petitioners here are raising the irrelevant question of whether and how V&S and its owner (the Kingdom of Sweden) may transfer the Beam Shares *internall*y to another wholly-owned subsidiary of V&S prior to selling them back to Fortune.  Those internal transfers will have no impact whatsoever on Petitioners or on the evaluation process to determine the Fair Market Value of the Beam Shares.

As described below, there is no dark purpose or mystery behind the internal transfer of the Beam Shares within the V&S corporate family.  The Swedish government is selling V&S to a French company, Pernod Ricard S.A. ("Pernod"), a competitor of Beam.  That transaction – to which Petitioners do not and cannot object – triggers Fortune's right to re-acquire from V&S the 10% of Beam's stock that Fortune does not currently own.  In order to effect that result, which Fortune itself has demanded, the Swedish government intends to transfer the Fortune shares to a wholly-owned V&S subsidiary.  The Swedish government will retain the shares of that

subsidiary when it sells the rest of V&S to Pernod.  The V&S subsidiary will then complete the sale of the Beam Shares to Fortune.  Fortune will get precisely what it is entitled to (*i.e.*, the Beam Shares at a Fair Market Value determined by negotiation or, more likely, by an independent appraiser), and has no basis for complaint or for a temporary restraining order.

1. The Shareholders and Registration Rights Agreement (the "Shareholders Agreement") – upon which Petitioners rely – specifically permits V&S to transfer the Beam Shares to one of its controlled subsidiaries.  (Pet'rs Ex. A at § 27, p. 26.)  That is precisely what V&S is doing.  The fact that after the Pernod transaction the Kingdom of Sweden will own the Beam Shares through a newly created subsidiary, rather than through V&S itself (which will be sold to Pernod), neither breaches the contract nor harms Petitioners in any way.

2. Petitioners provide no basis for emergency equitable relief "in aid of arbitration." If, as is likely, the parties are unable to negotiate a "Fair Market Value" for the Beam Shares, their contract provides for the matter to be decided by an independent third party with "significant expertise in the wine and spirits industry."  (*Id.* at § 27, p. 25.)  There is not the slightest indication that V&S (or its 100% owner, the Kingdom of Sweden) is resisting application of the contractual process to determine Fair Market Value.  The internal transfer of the stock between V&S entities, and the subsequent sale of V&S to Pernod, will not in any way interfere with that process.

3. Petitioners' protestations about having a "stranger" as a shareholder are ridiculous. V&S has always been 100% owned by the Kingdom of Sweden.  The fact that the Kingdom of Sweden will continue to own the Beam Shares through a newly created V&S subsidiary (which will, as it must, agree to be bound by the terms of the Shareholders Agreement), rather than through V&S, does not render the government a "stranger" or effect anything other than a

3

cosmetic change in share ownership. More importantly, the shareholding relationship is at an end. Fortune has exercised its right to re-acquire the Beam Shares held by V&S, which will eliminate the Kingdom of Sweden's ownership interest. The only thing left to complete the process is to arrive at a Fair Market Value for the shares, which will be decided by negotiation or arbitration.

In the end, there is little doubt as to why Fortune has brought this action. It cannot have any real interest in regulating how the government of Sweden apportions its holdings among its wholly-owned corporate entities. Instead, by threatening to interfere with the multi-billion-dollar sale of V&S to Pernod (which is what its requested injunction seems to do), Fortune clearly hopes to enhance its bargaining leverage as to how much it will have to pay to acquire the Beam Shares and to force the Kingdom of Sweden to accept a lower price. (It is also worth noting that Fortune was an unsuccessful bidder to acquire the entire V&S business.) This Court should not be asked to assist Petitioners in their intrigues.

We respectfully submit that the application for a temporary restraining order should be denied and that the petition should be dismissed.

## STATEMENT OF FACTS

V&S is a leading producer and distributor of wines and spirits based in Stockholm, Sweden. Its product portfolio includes many well-known brands, including Absolut Vodka, which are sold in 126 markets throughout the world. V&S is wholly owned by the Kingdom of Sweden. Fortune owns a 90% equity interest in Beam, which owns, among other brands, the Jim Beam Bourbon brand.

In the spring of 2001, in an effort to enhance the distribution network for its products, V&S entered into a distribution arrangement with Fortune/Beam for the V&S brands. As a result

Case 1:08-cv-04420-DLC   Document 6   Filed 05/13/08   Page 8 of 18

of that arrangement, V&S obtained from Fortune a 10% stake in Beam through the purchase of Beam preferred stock.  In connection with that transaction, Fortune, Beam and V&S executed the Shareholders Agreement, which sets forth the rights and obligations of the parties.  The Shareholders Agreement provides, *inter alia*, that in the event that ownership or control of V&S is transferred to a third party, Fortune would have the right to repurchase the Beam Shares at Fair Market Value.  (Pet'rs Ex. A at § 2(a)(ii).)  The Shareholders Agreement also permits V&S to transfer the Beam Shares to a Controlled Affiliate of V&S, as long as the Controlled Affiliate agrees in writing to be bound by the agreement as if it were an original party thereto.  (*Id.* at §§ 2, 27.)

On March 31, 2008, Pernod publicly announced that it had entered into an agreement to acquire V&S from the Kingdom of Sweden in a stock acquisition.  Before the Kingdom of Sweden entered into the agreement to sell V&S to Pernod, it had engaged in negotiations with other potential suitors including Fortune; however, Fortune was ultimately unsuccessful in its effort to purchase V&S.  By letter dated April 3, 2008 (the "Call Notice"),[1] Fortune exercised its right to repurchase the Beam Shares by providing V&S with the 60-days notice required under the Shareholders Agreement.  The parties then began the process of determining the Fair Market Value of the stock in accordance with the Shareholders Agreement.  After a meeting of Beam's Board of Directors (which includes a representative of V&S) during which they did not agree unanimously on the Fair Market Value, Fortune asked for written confirmation that V&S would abide by the terms of the Shareholders Agreement and, specifically, the prohibition on transfers other than those permitted by the agreement.  (Pet'rs Ex. B at 1.)

---

[1] Petitioners identify an April 24, 2008 letter as the "Call Notice."  That letter, however, addresses the valuation procedure being undertaken in connection with the April 3, 2008 notice.

5

By letter dated May 8, 2008, V&S responded by informing Fortune that it intended and expected that "both parties will comply with the terms of the Shareholder Agreement." (Pet'rs Ex. D at 1.)  V&S notified Fortune that, in compliance with the Shareholders Agreement, it intended to transfer the Beam Shares to a subsidiary wholly owned by V&S, so that the sale of V&S to Pernod and the sale of the Beam Shares to Fortune could be effectuated according to independent timelines.  (*Id.*)  V&S also explained that it was transferring the Beam Shares to a subsidiary rather than transferring them to Pernod (along with the rest of V&S) because it understood that Fortune preferred that approach.  (*Id.*)

Although Fortune's most recent 10-Q filing indicates that it valued the Beam Shares at approximately $543 million,[2] Fortune has told V&S that it now considers the Fair Market Value of the shares to be only $350 million.  (Pet'rs Ex. B at 1.)  V&S responded that it values the Beam Shares at approximately $1.1 billion.  (Pet'rs Ex. D at 1.)  Thus it is no surprise that the parties have been unable to agree on the Fair Market Value of the Beam Shares.  However, neither party has indicated an unwillingness to continue the process and to submit the issue to an independent arbitrator.  In fact, in a letter dated April 24, 2008, Fortune recognized that the Beam and V&S Board members "agreed to have representatives meet to attempt to reach an amicable resolution." (Pet'rs Ex. B at 1.)  Additionally, in a letter dated May 8, 2008, V&S suggested that it would "be sensible that we in the meantime prepare to submit the matter to an independent third party.  To that end, we propose that each of us develops a list of reputable, independent banks with expertise in the spirits industry, which each of us believes should be acceptable to the other." (Pet'rs Ex. D at 1.)  As noted above, the parties are scheduled to meet

---

[2] Fortune Brands, Inc., Quarterly Report (Form 10-Q), at 11 (Mar. 31, 2008).

this Friday, May 16, to discuss this issue and to exchange suggestions for selecting the independent third party.

In response to V&S's May 8, 2008 letter, and without warning or discussion, Fortune and Beam filed the instant action (and apparently one in Sweden seeking duplicative relief – which we have not yet seen) seeking a temporary restraining order and preliminary injunction prohibiting V&S from transferring, selling, or assigning the Beam Shares other than in compliance with the Shareholders Agreement, and/or from engaging in any transaction that would result in the Beam Shares being owned by an entity other than V&S or a V&S Controlled Affiliate.  (V. Pet. at 9-10.)  Despite the meeting scheduled for Friday, Petitioners seek to continue their petition for truly extraordinary relief.

## ARGUMENT

A temporary restraining order is an "extraordinary remedy" that should "not be granted lightly." *Von Grabe v. Ziff Davis Publ'g Co.*, No. 91 Civ. 6275 (DLC), 1994 WL 719697, at *1 (S.D.N.Y. Dec. 19, 1994) (citing *Borey v. Nat. Union Fire Ins. Co.*, 934 F.2d 30, 33 (2d Cir. 1991)).  Such an order is appropriate only when the party seeking relief demonstrates (1) that it would suffer irreparable harm should the relief not be granted, and (2) either a likelihood of success on the merits, or sufficiently serious questions about the merits and a balance of hardships tipping decidedly in its favor.[3]  *Id.* at *1-2 (citing *Local 1814, Int'l Longshoremen's Ass'n N.Y. Shipping Ass'n*, 965 F.2d 1224, 1228 (2d Cir. 1992)).  Because Petitioners here cannot satisfy these requirements, the Court should deny the Petition for Injunction In Aid Of Arbitration.

---

[3] The standard for granting a temporary restraining order is the same as that which governs the granting of a preliminary injunction.  *Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n*, 965 F.2d 1224, 1228 (2d Cir. 1992).

**I.      The Transfer of Beam Shares Would Not Breach the Shareholders Agreement**

Petitioners cannot demonstrate a likelihood of success on the merits.  The only proposed transfer of Beam Shares described in the petition is the transfer from V&S to a V&S subsidiary.  The Shareholders Agreement expressly permits V&S to transfer the Beam Shares to a wholly-owned affiliate.  (Pet'rs Ex. A at § 27, p. 26.)  Thus, Petitioners' contention that the transfer of shares breaches the plain language of the agreement is simply incorrect.  (*See* Pet'rs' Mem. Of Law ("PMOL") at 9.)  Indeed, V&S explicitly designed the contemplated transfer to *facilitate*, not frustrate, Fortune's exercise of its Call Option to purchase the Beam Shares – a right that V&S does not dispute.

Petitioners are really arguing that the second step of the proposed transaction – whereby V&S would be sold to Pernod and V&S's subsidiary would remain a subsidiary of the Kingdom of Sweden (the same ultimate owner that Petitioners have lived with for the past seven years) – violates the Shareholders Agreement because the subsidiary would no longer be a Controlled Affiliate of V&S.  That is incorrect.  First, this portion of the transaction does not involve *any* transfer of the Beam Shares, which would remain under the ownership of the V&S subsidiary.  It simply involves a change in ownership structure so that the Kingdom of Sweden holds the shares of the V&S subsidiary directly rather than through V&S.  Petitioners can point to no provision of the agreements that prohibits such a corporate transaction.

Second, under the terms of the agreement, the V&S subsidiary will provide an explicit undertaking to be bound by the terms and conditions of the Shareholder Agreement, and thereafter is deemed to *be* "V&S" for purposes of the agreement.  (Pet'rs Ex. A at § 27, p. 26.)  The V&S subsidiary, which acquired the Beam Shares in an undisputedly Permitted Transfer, is a permissible holder of the Beam Shares without regard to any subsequent transfer of V&S.  No

provision of the contract provides that the V&S subsidiary's status as a proper holder of the Beam Shares is nullified by the subsequent sale of V&S to a third party. In arguing to the contrary, Petitioners essentially are asking the Court to add a provision to the agreement to the effect that the corporate ownership of a Controlled Affiliate must remain unchanged *after* a Permitted Transfer, even though the ultimate controlling entity – the Kingdom of Sweden – remains the same. The Court should decline to do so here, particularly since the equities (and common sense) clearly point in the opposite direction.

The parties bargained for an arrangement pursuant to which the Beam Shares would be held by an entity (*i.e.*, V&S) that was wholly owned by the Kingdom of Sweden. Pursuant to the contemplated transfer, the status quo would remain unchanged – the Beam Shares would still be held by an entity (*i.e.*, the V&S subsidiary) that is wholly owned by the Kingdom of Sweden. The Kingdom of Sweden can hardly can be viewed as the "stranger" Petitioners claim it to be – it has been the controlling party of the 10% stake from the start – and in any event the Beam Shares will continue to be held through a V&S subsidiary that will be bound by the Shareholders Agreement. (*See* Ex. A at § 27, p. 26.) As a practical matter, the internal transfer of the Beam Shares will have no impact on Fortune's acquisition of those shares at Fair Market Value. As noted in its letter dated May 8, 2008, and as demonstrated by the scheduled Friday morning meeting, V&S stands ready to proceed expeditiously with exchanging lists of acceptable arbitrators to move the process forward.[4]

---

[4] V&S's plan to transfer the Beam Shares to its wholly-owned subsidiary was made in light of its understanding that Fortune did not want the Beam Shares to be transferred to the buyer of V&S. (*See* Pet'rs Ex. D at 1.)

## II.     Petitioners Would Not Be Harmed If The Court Denies Relief

"Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Gaming Mktg. Solutions, Inc. v. Cross*, No. 07 Civ. 4624 (RJS), 2008 WL 858183, at *4 (S.D.N.Y. Apr. 1, 2008) (quoting *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233-34 (2d Cir. 1999)).  Here, Petitioners cannot establish that they would suffer *any* harm – let alone irreparable harm – if the Court denied the requested relief.

### A.     The Proposed Arbitration is Irrelevant

As described above, the issue raised by Petitioners in this case with respect to which Sweden-owned entity properly may hold the Beam Shares is a red herring.  Regardless of how that issue is resolved, Fortune will purchase the Beam Shares at Fair Market Value as determined by an independent appraisal.  The specific ownership structure of V&S has no impact on that result or on the timing of the transaction's completion.

In support of their position, Petitioners suggest that if the contemplated transfer were to occur, the Beam Shares would be held by a "stranger" – the Kingdom of Sweden – which might have no obligation to sell the Beam Shares to Fortune. (PMOL at 11.)  These arguments ignore both the plain language of the Shareholders Agreement and the parties' course of dealing.

First, the Shareholders Agreement explicitly provides that, as a condition precedent to a Permitted Transfer, the transferee (*i.e.*, the new subsidiary) must agree in writing to be bound by the agreement as though it were an original party thereto. (Pet'rs Ex. A § 27, p. 26.)  Thus, V&S's subsidiary would have the *same obligation* to honor Fortune's Call Option as would V&S.  Second, V&S explicitly stated in its May 8, 2008 letter that its subsidiary would proceed to arbitration, and at no time has there ever been an indication of any unwillingness to do so. Finally, as the chart in Petitioners' papers clearly shows, the Kingdom of Sweden would remain

10

the ultimate owner and in control of the entity that held the Beam Shares – V&S or its wholly-owned subsidiary – under *either scenario*.  (PMOL at 6.)  Thus, the requested relief would have no practical effect on the transaction to reacquire the Beam Shares, and Petitioners can make no showing of irreparable harm.

### B. The Purported Harm Is Speculative and Hypothetical

Petitioners also must demonstrate that their purported injury is "neither remote nor speculative" but "likely" and both "actual and imminent."  *Gaming Mktg. Solutions, Inc.*, 2008 WL 858183, at *4.  Here, Petitioners argue in conclusory fashion that the harm they would allegedly suffer from the contemplated transfer of the Beam Shares to a "stranger" is "not just hypothetical" because "a stranger will enjoy – and *could* attempt to exercise – all the rights and privileges of minority ownership in Beam."  (PMOL at 10 (emphasis added).)  Because that "stranger" has been the 100% owner of V&S since the inception of the Fortune-V&S relationship, there will be absolutely no change, clearly demonstrating why such bald assertions are insufficient to support the finding of irreparable harm necessary to grant emergency injunctive relief.  *See Cedar Swamp Holdings, Inc. v. Zaman*, 472 F. Supp. 2d 591, 595-96 (S.D.N.Y. 2007) (denying request for an order preliminarily enjoining defendants from influencing or controlling entities owned by plaintiff because plaintiff could offer only scant evidence that defendants had actually attempted to exercise such influence or control).

Nor do Petitioners help their cause by arguing that any transfer of the Beam Shares to a so-called "stranger" would harm them because it would afford that "stranger" the right to sit on Beam's board. (V. Pet. at 8.)  V&S always has had the right to designate for election to the Beam board a full time employee of any one of its "affiliates," a term that includes a parent entity such as the Kingdom of Sweden.  (Pet'rs Ex. A at § 1, p. 2.)  The contemplated transaction

11

will not change this, and demonstrates further why the suggestion that the 100% owner of V&S is a stranger to Fortune or Beam is not credible.

In addition to establishing likely harm, Petitioners also must establish that the purported harm "cannot be remedied by an award of monetary damages." *Gaming Mktg. Solutions, Inc.*, 2008 WL 858183, at *4. Although Petitioners rely on *Wisdom Import Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101 (2d. Cir. 2003), for the proposition that the "intrinsic value in bargained-for contractual provisions governing management of [a] company is non-compensable" (*see* PMOL at 11), the court in *Wisdom* declined to give its holding so broad an application:

> This is not to say that all bargained-for contractual provisions provide a basis for injunctive relief upon breach or threatened breach; such a broad holding would eviscerate the essential distinction between compensable and non-compensable harm. We hold only that the denial of bargained-for *minority* rights, standing alone, may constitute irreparable harm for purposes of obtaining preliminary injunctive relief where such rights are central to preserving an agreed-upon balance of power (*e.g.,* preserving the management role of the minority directors) in corporate management.

*Wisdom*, 339 F.3d at 114 (emphasis added).[5] As 90% owner of Beam, Petitioners cannot identify a plausible threat to their control of Beam, nor do they cite to any precedent suggesting that a sale of stock by a *minority* shareholder should be enjoined to protect the rights of the *majority* – in this case a 90% majority – whose control is in no way threatened. Such disputes find adequate remedies at law and do not meet the heightened requirements for injunctive relief. Because Petitioners are majority stockholders who do not and cannot allege any imminent harm,

---

[5] Petitioners' reliance on *Alcatel Space, S.A. v. Loral Space & Communications Ltd.*, 154 F. Supp. 2d 570 (S.D.N.Y. 2001), is similarly misplaced, as that case also involved a request for a preliminary injunction to protect the rights of the minority. (*See* PMOL at 10.)

12

they cannot satisfy the irreparable harm element, and their request for emergency relief should be denied.

        **C.     Petitioners Will Not Be Harmed By Dealing with a Company Owned By the Kingdom of Sweden**

Petitioners claim throughout their briefing that they will be irreparably harmed by having to deal with the Kingdom of Sweden as opposed to V&S because the former is a "contractual and business stranger" and an outsider to the complex legal relationships created by the joint venture among Fortune, Beam and V&S.  (*See, e.g.*, PMOL at 2, 10.)  As discussed above, this argument is factually incorrect because the Kingdom of Sweden has owned V&S since the parties entered into the Shareholders Agreement.

In addition, Petitioners' argument is irrelevant because the shareholder relationship with Beam is ending.  Petitioners have already exercised their Call Option, and V&S (and the Kingdom of Sweden) acknowledges that, pursuant to the Shareholders Agreement, it must sell the Beam Shares back to Petitioners.  All that is left to determine – through negotiation or arbitration – is the Fair Market Value of the Beam Shares.  Whether Petitioners have to negotiate with (or arbitrate against) one Swedish government-owned entity or another is irrelevant.  In each instance, the ultimate parent and controlling entity of the economic interest in the Beam Shares will be the same.

**III.    The Balance of Hardships Weighs in Favor of Respondent**

In assessing the balance of hardships, a court must ask "which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided." *Tellium, Inc. v. Corning Inc.*, No. 03 Civ. 8487 (NRB), 2004 WL 307238, at *8 (S.D.N.Y. Feb. 13, 2004).  In this case, there can be no doubt that Respondent would suffer more than Petitioners in the event of an incorrect and adverse ruling.  If the Court were to deny the requested relief, Petitioners

would be in the same position in which they currently find themselves: they would have exercised their Call Option and would be negotiating with an entity controlled by the Kingdom of Sweden that recognizes the Petitioners' right to purchase the Beam Shares and intends to carry out its obligation to sell them at Fair Market Value.  On the other hand, by granting the relief requested, the Court would be interfering with (and would threaten) a separate transaction worth approximately $8 billion.  In so doing, the Court would reward Petitioners' attempt to exploit the litigation process by giving them the leverage they seek to try to decrease the price of their Call Option and obtain a financial windfall.  Having lost the auction to buy V&S, Petitioners are not entitled to use this Court as bargaining leverage.

      Petitioners cite two cases in support of the assertion that the balance of hardships weigh in their favor, both of which are inapposite.  *Suchodolski Associates, Inc. v. Cardell Financial Corp.* involved a group of plaintiffs who were shareholders of an entity that had procured a loan from the defendant and who pledged their shares to the defendant as collateral.  No. 03 Civ. 4148 (WHP), 2003 WL 22909149, at *1 (S.D.N.Y. Dec. 10, 2003).  After the entity defaulted on the loan, the plaintiffs brought a breach of fiduciary duty claim against the defendant, and they sought a preliminary injunction to maintain the status quo while the arbitration proceeded.  *Id.* at *2.  The court found that the balance of hardships tipped in the plaintiffs' favor because, absent an injunction, the plaintiffs could lose their shares in the entity and their right to participate in the entity's business.  *Id.* at *5.  Here, Petitioners do not face the possibility that they will lose their shares or their right to participate in Beam's business.  To the contrary, if a temporary restraining order is not issued, Petitioners will suffer no hardship at all – they will simply repurchase the shares at Fair Market Value from their owner, who will be bound by the Shareholders Agreement.

In *Tellium*, the plaintiff sought an injunction against an arbitration proceeding that the defendant instituted against it related to a series of agreements to which the plaintiff was not a party. 2004 WL 307238, at *1-2. The court found that the balance of hardships weighed in the plaintiff's favor because enjoining the arbitration would simply maintain the status quo until the court could decide the underlying issues, and the defendant would still be able to pursue its claims in the arbitration against the appropriate parties. *Id.* at *8. By contrast, an injunction in the present case would cause substantial harm to V&S by interfering with its indisputably legitimate plans to complete an $8 billion transaction with Pernod. *See, e.g.*, *Albert v. Avery, Inc.*, 724 F. Supp. 245, 251 (S.D.N.Y. 1989) (holding that where postponement of proposed sale of corporation could cause seller losses and plaintiff is unwilling to bond the potential loss, balance of hardships tilts in favor of seller). In these circumstances, the Court should deny the requested relief.

## CONCLUSION

For the foregoing reasons, the Court should deny the application for a temporary restraining order and dismiss the Petition for Injunction In Aid Of Arbitration.

Respectfully Submitted,

DAVIS POLK & WARDWELL

By   /s/ Arthur F. Golden

Arthur F. Golden
arthur.golden@dpw.com
Joel M. Cohen
joel.cohen@dpw.com
450 Lexington Avenue
New York, New York 10017
Phone: (212) 450-4000
Facsimile: (212) 450-3800